**SCURLOCK, County Atty., v. WINGATE et al.**
**(No. 1390.)**

(Court of Civil Appeals of Texas. Beaumont.
April 12, 1926. Rehearing Denied
April 21, 1926.)

**1. Animals ⊗⟹50(2).**

Terrell Election Law, requiring ballots to be signed by presiding judge, does not apply to stock law elections.

**2. Animals ⊗⟹50(2)—That stock law election officers made returns as from certain voting precinct, instead of drainage district, for which election was had, held not to defeat election.**

Where stock law election was duly and legally held, mere irregularity of election officers in making returns as from certain voting precinct instead of drainage district for which election was had, and the boundaries whereof near-

ly coincided with precinct, *held* not to invalidate election.

### 3. Elections ⚖227(1).

Mere clerical errors cannot invalidate and destroy result of election fairly held and honestly and truly declared.

### 4. Animals ⚖50(2)—Stock law election held not void, because one set of election officers conducted both elections, and one form of ballot was used for both elections (Rev. St. 1911, arts. 7218, 7245).

Stock law election *held* not so irregular as to be invalidated because order for election appointed same persons to hold election as to horses, etc., as well as that as to hogs, etc., where separate ballot boxes were provided and used; nor because same form of ballot was used in each election, where the ballots complied with requirements of Rev. St. 1911, arts. 7218, 7245.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by Bailey Wingate and others against Marvin Scurlock, County Attorney, to avoid a stock law election. From a judgment avoiding the election, the County Attorney appeals. Reversed and rendered.

Smith, Crawford & Sonfield, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellees.

O'QUINN, J. This is a stock law election contest. The case was tried before the court without a jury and judgment rendered declaring the election void. The case is before us on appeal.

The record contains the following findings of fact and conclusions of law by the court:

#### "Conclusions of Facts.

"I find the facts in the above entitled and numbered cause to be as follows:

"An election was held in drainage district No. 3, of Jefferson county, Tex., at Hampshire on May 24, 1924, for the purpose of determining whether horses, cattle, jacks, and jennets should be permitted to run at large within the territorial limits of drainage district No. 3, and also to determine whether hogs, sheep, cattle, and goats should be permitted to run at large in drainage district No. 3, and the result of the election was in favor of prohibiting both classes of animals from running at large in drainage district No. 3.

"The election was held in obedience to a petition signed by the requisite number of qualified persons, residents and freeholders of drainage district No. 3, calling for the election, and the election was ordered by legally constituted authority at the next term of the commissioners' court after the petition was filed, and the order calling for the election was duly published in the manner and for the time required by law, and the election was held on the day designated in the order, and properly qualified judges appointed by the court, and after the returns were made the county judge issued a proclamation announcing the result of said election.

"I further find that the persons appointed by the court to hold the election, and who in fact did hold the election, made returns of an election held in election precinct No. 36 of Jefferson county, Tex., and did not make returns of an election held in drainage district No. 3, of Jefferson county, Tex.

"I find that voting precinct No. 36 contains more territory by several square miles than drainage district No. 3, though their boundaries correspond in places; several surveys being in the voting precinct which are not in the drainage district, and some territory in the drainage district which is not in the voting precinct.

"I further find that the election to determine whether hogs, sheep, and goats, and the election to determine whether cattle, horses, jacks, and jennets, should be permitted to run at large, were held at one and the same time and place, and that there was only one form of printed ballot used in the election which read; 'for the stock law,' and 'against the stock law,' and that there was a box provided at said election in which to deposit ballots voted on the proposition of whether cattle and animals of that character should be permitted to run at large were deposited, and another box provided in which to deposit ballots voted on the question of whether hogs should be permitted to run at large were deposited. I find that none of the ballots voted at said election contained the signature of the presiding officer, or any one else.

"I further find that within the time and in the manner provided by law, notice was given to the county attorney of Jefferson county, Tex., by the contestants through their attorney of their intention to contest, and thereafter, within the time and in the manner provided by law, the suit to set aside the election was filed.

#### "Conclusions of Law.

"I find the following as my conclusions of law governing the facts in this case;

"I find that inasmuch as the ballots cast at both of said elections were unsigned by the presiding judge of the election, the same were void, and that it was illegal for the persons holding said election to count the same or any of them, and therefore the election is void.

"I further find that the fact that the persons charged with the duty of holding the election made a return of an election held in election precinct No. 36, instead of drainage district No. 3, renders the election void.

"I further find as a matter of law that the election was so irregular in the manner of holding and conducting the same as to render the result thereof difficult, if not doubtful, of ascertainment, and that same is and should be declared illegal and void."

We may add, the record shows the vote was 41 to 9 in favor of preventing hogs, sheep, and goats from running at large, and 33 to 23 in favor of preventing horses, mules, jacks, jennets, and cattle from running at large.

[1] The court's conclusion of law that the election was void because the presiding judge of the election did not sign his name on the ballots cast at said election, and therefore said ballots should not have been counted,

cannot be sustained. Stock law elections are special elections, and the General Election Law, commonly called the "Terrell Election Law" (Gen. Laws 1905, 1st Ex. Sess. c. 11), which requires that all ballots shall be signed by the presiding judge, and that no ballot that does not bear his signature shall be counted does not apply. Walker v. Mobley, 103 S. W. 490, 101 Tex. 28; Wallis v. Williams, 108 S. W. 153, 101 Tex. 395; Walker v. Mobley (Tex. Civ. App.) 105 S. W. 61; Clark v. Willrich (Tex. Civ. App.) 146 S. W. 947; Hillert v. Schweppe (Tex. Civ. App.) 234 S. W. 152; Hewitt v. Mays (Tex. Civ. App.) 253 S. W. 610; Durham v. Rogers, 106 S. W. 906, 48 Tex. Civ. App. 232; Ex parte Kimbrell, 83 S. W. 382, 47 Tex. Cr. R. 333. Appellees cite us to Clark v. Hardison, 90 S. W. 343, 40 Tex. Civ. App. 611, Arnold v. Anderson, 93 S. W. 695, 41 Tex. Civ. App. 508, and Brigance v. Horlock, 97 S. W. 1061, 44 Tex. Civ. App. 277, as supporting their contention that the ballots were illegal and could not be counted because none of them were signed by the presiding judge. The cases cited do so hold, but they were, in effect, overruled by the Supreme Court in the cases of Walker v. Mobley, 103 S. W. 490, 101 Tex. 28, and Wallis v. Williams, 108 S. W. 153, 101 Tex. 395, since which holding it has been uniformly held that in special elections the ballots do not have to be signed by the presiding officer.

[2, 3] Neither can the court's conclusion that, because the officers holding the election made returns for an election held in voting precinct No. 36, instead of drainage district No. 3, be sustained. As was found by the court, the election was held in obedience to petitions signed by the requisite number of qualified persons residents and freeholders of drainage district No. 3, calling for the election, and the election was ordered by the legally constituted authority at the next term of the commissioners' court after the petitions were filed, and the order calling for the election was duly published in the manner and for the time required by law, and the election was held on the day and at the polling place named in the order, and by the properly qualified persons appointed by the court, and after the returns were made, proclamation declaring the result of said election was duly and legally made. However, in making the returns, the officers filled in the blank on the outside of the official envelope furnished them in which to make the returns, as follows:

"Returns of a special election held at Hampshire in election precinct No. 36 in Jefferson county, Tex., on the 24th day of May, 1924, for determining whether or not cattle, horses, mules, etc., shall run at large."

This was on the envelope provided for making the returns of the election to determine whether horses, mules, jacks, jennets, and cattle should be permitted to run at large. The return on the envelope provided for making the returns of the election to determine whether hogs, sheep, and goats should be permitted to run at large was:

"Returns of a special election held at Hampshire, Tex., in election precinct No. 36 in Jefferson county, Tex., on the 24th day of May, 1924, for determining whether hogs, sheep, goats, etc., shall run at large."

From this the court concluded and held that no returns had been made of the election held in drainage district No. 3, as ordered by the commissioners' court. At the very most, the returns were only irregular, and the irregularity was of the frailest sort. The record discloses that while drainage district No. 3 does not entirely coincide in its boundaries with election precinct No. 36, it lies almost entirely within said election precinct, and that Hampshire, the polling place where said election was ordered to be held, is in both drainage district No. 3 and voting precinct No. 36. The mere fact that the officers of the election, in filling in a blank on the official envelope furnished them in which to make the returns, happened to write in after the words, "election precinct No. ———," the number "36," instead of erasing the words "election precinct" and inserting "drainage district No. 3," is a mere clerical error, an irregularity, in no wise affecting the result of the election, and is of no moment. The object of every election is to ascertain the will of the people on the matter involved. The laws enacted to secure this object, in so far as they require the election to be by ballot, the day of the election, and the place where the election shall be held, are mandatory. Other provisions of the law prescribing the conduct of and the return of the election are directory, and mere irregularities in their observance, which have not prevented the voters from exercising freely and fairly their right of suffrage and from having their votes properly counted, must be treated as informalities which do not vitiate the election, especially when there is no law providing that such irregularities shall render the election void. Fowler v. State, 3 S. W. 255, 68 Tex. 30; McKinney v. O'Connor, 26 Tex. 5. There is no claim that the ballots as cast had been changed, or had been improperly tabulated, but, to the contrary, it is shown that they had not been changed, and that the true result of the election was shown by the returns. This mere clerical error can in no wise invalidate and destroy the result of an election admitted to have been fairly held and honestly and truly declared. Bell v. Faulkner, 19 S. W. 480, 84 Tex. 187; Moore v. Plott (Tex. Civ. App.) 206 S. W. 958; Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1166, 1169; Kulp v. Bailey, 89 S. W. 957, 99 Tex. 318; Hillman v. Kuykendall (Tex. Civ. App.) 223 S. W.

242. We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake of election officers, in performing the clerical duties cast upon them in making the returns of the election. The object of an election is to ascertain the popular will, and not to thwart it. The object of the election laws is to secure the rights of duly qualified voters, and not to defeat them. Statutory regulations are enacted to secure freedom of expression at the ballot box, and to prevent fraud, and not by technical obstruction to make the right of voting insecure and difficult, or to annul the result of the election.

[4] The court further found that the election was "so irregular in the manner of holding and conducting the same as to render the result thereof difficult, if not doubtful, of ascertainment and that same is and should be declared illegal and void." Just what matters and things connected with the holding of said election the court deemed "irregular in the manner of holding and conducting the same" we are not advised, but we think it may be fairly implied from his findings of fact (1) that one set of election officers conducted and held the two elections at the same time and place; and (2) that only one form of ballot was used for the two elections, were regarded as irregularities and formed the basis of the court's holding. It is shown that the order for the election appointed the same persons to hold each election, and that two ballot boxes were provided and used in which to deposit the ballot. The ballots voted in determining whether horses, etc., and those voted to determine whether hogs, etc., should be permitted to run at large, were deposited in separate boxes—not in any manner mixed—were counted separately, and placed in separate return envelopes, and each identified and pointed out upon the trial. It is not contended that any confusion arose in the matter, nor is there any dispute as to the correct tabulation and report of the vote. The ballot used, it is true, was in form the same for each election, but the statutes, article 7218, prescribing the form of the ballot to be used in voting to determine whether hogs, sheep, and goats should be permitted to run at large, and article 7245, prescribing the form of the ballot to be used in voting to determine whether or not horses, mules, jacks, jennets, and cattle should be permitted to run at large, each prescribes that—

"Voters desiring to prevent the animals designated in the order from running at large shall place upon their ballots the words, 'For the stock law,' and those in favor of allowing such animals to run at large shall place upon their ballots the words, 'Against the stock law.' "

The court found that these words were on all the ballots. So the ballots complied with the law. The undisputed facts do not sup-

port the court's holding that from the manner of holding and conducting the election the result was difficult or doubtful of ascertainment.

From what we have said, it follows that the judgment of the trial court should be reversed and here rendered for appellant, and it is so ordered.

Reversed and rendered.